UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

| | |
|---|---|
| RICHARD POHLY,<br><br>       Plaintiff,<br><br>v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>       Defendant. | No. 1:16-mc-00223-PAB |

**PLAINTIFF'S OPPOSITION TO DEFENDANT ISI'S
MOTION TO MODIFY PLAINTIFF'S SUBPOENAS TO ENCISION, INC.**

Plaintiff Richard Pohly responds to Defendant Intuitive Surgical, Inc.'s Motion to Modify Plaintiff's Subpoenas to Encision, Inc. (Dkt. #1).

### I.    Introduction and Relief Requested

This motion concerns discovery requests for documents and testimony related to a "no feasible alternative design"[1] defense being mounted by Intuitive Surgical, Inc. (hereinafter "Intuitive"), under California law in this medical device product liability case. Plaintiff Richard Pohly was severely injured by a product Intuitive later recalled. His lawsuit alleges that the injury occurred because Intuitive's design and manufacturing processes failed to prevent "microcracks" from compromising the insulation on certain electrified surgical scissors[2] Intuitive sold to hospitals from 2009-2013. Pohly alleges that – in addition to constructing its scissors without microcracks – Intuitive should have included a fail-safe feature called "Active Electrode Monitoring" (AEM) in the design of its scissors. AEM is essentially a form of circuit breaker that that shuts current off when an insulation failure is detected.

---

[1] *See* the California pattern instruction at CACI 1204, which is attached as Exhibit 7 to the Mullenix Declaration.
[2] The electrified scissors are known by Intuitive as "Hot Shears," "Monopolar Curved Scissors," or "MCS."

The industry leader on the use of AEM technology in surgical instruments is Encision, Inc., a Boulder, Colorado, medical device company. Intuitive contracted with Encision to use its technology in 2009, three years before Mr. Pohly's surgery. But Intuitive did not follow through and incorporate AEM into the electrified scissors used on Mr. Pohly. Intuitive's company witnesses have suggested, vaguely, that doing so would not have been feasible or desirable. But as Intuitive concedes in its motion, Intuitive *has* worked to include AEM in its *latest* version of electrified surgical instruments. The discovery in this case is directed at learning why that technology has, since 2012, become feasible and desirable in the eyes of Intuitive, as that relates to the feasibility defense.

Boiled down, Intuitive's only two objections are (1) that the information related to the newer electrified instruments, which have AEM, is irrelevant, and (2) that the information is trade secret. As to the first issue, Intuitive's incorporation of AEM in its newer instruments casts doubt on its claim that it would not have been feasible to incorporate AEM into its older instruments. If the AEM technology has not significantly changed between 2009 and 2013, that fact cuts against any argument that AEM was not feasible in 2012 (the time of Mr. Pohly's surgery). And even if there has been some significant change in AEM technology or Intuitive's design capabilities, Mr. Pohly is entitled to discover and explore the contours of that change: discovery is allowed for claims *and* defenses.

As to the second issue, Intuitive's concerns can be adequately addressed by the already-agreed stipulated protective order between plaintiff, Intuitive, and Encision, which Intuitive filed on November 16 (one week after it filed this motion).[3] In this and other litigation over the past four years, plaintiff's counsel has received more than 100,000 pages of documents that Intuitive has, for the most part, labeled as confidential trade secret. Plaintiff's counsel has made use of these documents in litigation without incident, and the protective order is sufficient to protect

---

[3] Exhibit 8 to Mullenix Declaration.

Intuitive's trade secrets.[4] In fact, Intuitive's counsel has explained that its "trade secret" objection is really just another form of its relevance objection.[5]

Finally, the Court should be aware that Plaintiff and Encision (though not Intuitive) have come to agreement as to the proper scope of each item in plaintiff's subpoena and Rule 30(b)(6) notice. Though Encision does make objections,[6] the following table sets out the agreements Encision has proposed (and plaintiff has accepted) regarding each request:

| 30(b)(6) Topic | Intuitive Objection | Encision/Plaintiff Agreement |
| --- | --- | --- |
| 1. Any agreements with Intuitive Surgical, Inc. that refer or relate to the licensing or other use of Encision's Active Electrode Monitoring Technology. | Overbroad as to scope and time; seeks trade secret or other confidential research, development or commercial information | Encision is willing to produce a witness who will testify about the indicated topic. |
| 2. The persons employed by or representing Intuitive Surgical, Inc., and Encision, Inc., who communicated with regard to Intuitive's purchase of the right to use AEM technology. | Overbroad as to scope and time | Encision is willing to make reasonable efforts to educate and produce a witness who will testify about the indicated topic. |
| 3. What Intuitive surgical [sic] asked Encision about the incorporation of AEM technology into the da Vinci robotic system between prior to [sic] May 2013, and what Encision told Intuitive in response. | Overbroad as to scope; seeks trade secret or other confidential research, development or commercial information | Encision is willing to make reasonable efforts to educate and produce a witness who will testify about the indicated topic. |
| 4. What Intuitive Surgical told Encision about Intuitive's evaluation of Active Electrode | Overbroad as to scope; seeks trade secret or other confidential research, | Encision is willing to make reasonable efforts to educate and produce a witness who |

---

[4] ¶2 to Mullenix Declaration.
[5] Exhibit 13 to Mullenix Declaration.
[6] The objections and proposals by Encision, which Plaintiff has accepted, are set out in Exhibit 2 to the Mullenix Declaration.

PLAINTIFF'S OPPOSITION TO DEFENDANT ISI'S
MOTION TO MODIFY SUBPOENAS TO ENCISION, INC. – Page 3
*Pohly v. Intuitive Surgical, Inc.,* No. 1:16-mc-00223-PAB

| | | |
|---|---|---|
| Monitoring technology and the place of AEM technology in robotic surgery, prior to May 2013. | development or commercial information | will testify about the indicated topic. |
| 5. The feasibility of incorporating Active Electrode Monitoring technology into Intuitive's Monopolar Curved Scissors prior to May 2013. | Overbroad as to scope; seeks trade secret or other confidential research, development or commercial information | Encision is willing to make reasonable efforts to educate and produce a witness who will testify about the indicated topic as it relates to the MCS Product. |
| 6. What Intuitive told Encision about the feasibility of incorporating Active Electrode Monitoring technology into Intuitive's Monopolar Curved Scissors prior to May 2013. | Overbroad as to scope; seeks trade secret or other confidential research, development or commercial information | Encision is willing to make reasonable efforts to educate and produce a witness who will testify about the indicated topic as it relates to. the MCS Product. |
| 7. Encision's understanding of Intuitive's reasons for choosing not to incorporate Active Electrode Monitoring technology into Intuitive's Monopolar Curved Scissors prior to May 2013. | Overbroad as to scope; seeks trade secret or other confidential research, development or commercial information | Encision responds that to the best of its knowledge, Intuitive did not provide any reasons. |
| 8. Whether Intuitive currently uses any Encision technology in any version, design or production, of its robotic surgery system. | Overbroad as to scope and time; seeks trade secret or other confidential research, development or commercial information | Encision is willing to make reasonable efforts to educate and produce a witness who will testify about the indicated topic. |
| **Document Request on SDT** | **Intuitive Objection** | **Encision/Plaintiff Agreement** |
| 1. All agreements with Intuitive Surgical, Inc., that refer or relate to the licensing or other use of Encision's Active Electrode Monitoring Technology. | Overbroad as to scope and time; seeks trade secret or other confidential research, development or commercial information | Encision is willing to produce non-privileged responsive documents. |
| 2. All communications with Intuitive Surgical related, Inc., [sic] to the incorporation or use of Active Electrode Monitoring technology in any da Vinci robotic system. | Overbroad as to scope and time; seeks trade secret or other confidential research, development or commercial information | Encision is willing to produce non-privileged responsive emails and other communications that can be located through reasonable efforts. |

| | | |
|---|---|---|
| 3. All internal Encision communications (including emails) prior to May 2013 reflecting or referring to statements made by any employee or representative of Intuitive Surgical regarding or relating to Active Electrode Monitoring technology. These emails may be redacted so that only the statements by Intuitive are provided. Alternatively, Encision can provide a list of the statements in question, along with the date and author of the Intuitive employee or representative making the statement, if known. | Overbroad as to scope; seeks trade secret or other confidential research, development or commercial information | Encision is willing to produce non-privileged responsive emails and other communications that can be located through reasonable efforts. |
| 4. All documents related to the feasibility of incorporating Active Electrode Monitoring technology into any Intuitive instrument, including Monopolar Curved Scissors. | Overbroad as to scope and time; seeks trade secret or other confidential research, development or commercial information | Encision is willing to produce non-privileged responsive documents relating to the MCS Product that can be located through reasonable efforts. |
| 5. All design drawings for any version of Intuitive's Monopolar Curved Scissors provided to Encision. | Overbroad as to scope and time; seeks trade secret or other confidential research, development or commercial information | Encision responds that it does not believe any responsive documents exist. |
| 6. All documents reflecting any explanation by Intuitive Surgical for why Active Electrode Monitoring technology was not incorporated into Intuitive's Monopolar Curved Scissors. | Overbroad as to scope and time; seeks trade secret or other confidential research, development or commercial information | Encision is willing to produce non-privileged responsive documents relating to the MCS Product that can be located through reasonable efforts, if any exist. |

Plaintiff respectfully asks the Court to deny the motion and allow the discovery to proceed according to the limitations already agreed upon between plaintiff and Encision, which are set out in Exhibit 2 to the Mullenix Declaration.[7]

## II. Factual Background

Richard Pohly is one of three people represented by his counsel for injuries arising from "microcracks" in the electrical insulation for certain electrified surgical scissors that defendant ISI sold from 2009-2013, which allowed stray electricity to escape and burn patient tissue unbeknownst to the operating surgeons.[8] Intuitive recalled the scissors in May 2013, but Mr. Pohly had already suffered a bowel perforation caused by stray electricity in a Texas surgery in July 2012. Mr. Pohly's case is pending in federal court in the Northern District of California. The other two injured persons, Larice Roop and Sarah Bosshart, suffered injuries to their ureters as a result of the insulation failures in July 2012 and October 2012 hysterectomies in Washington state. The Roop/Bosshart case is currently pending in state court in King County, Washington. In that case, the hospital, which purchased the scissors used in the hysterectomies, has brought cross-claims against Intuitive for breaching the Washington Consumer Protection Act by selling the hospital defective scissors. All three injured plaintiffs, the Washington hospital, and Intuitive Surgical have agreed that the two cases (Roop/Bosshart and Pohly) are related. All parties are coordinating discovery on liability issues between the two cases. All parties (including Encision) have agreed on the language of a protective order that would protect trade secrets for documents disclosed in discovery.[9]

One of the claims in all three cases is that defendant Intuitive knew or should have accounted for the possibility of insulation failures by adopting a failsafe technology known as "Active Electrode Monitoring" (AEM) into its electrified scissors.[10] As it relates to Mr. Pohly's case, the claim is that the scissors were unreasonably dangerous because they did not incorporate

---

[7] See also ¶5 to Mullenix Declaration (Plaintiff agrees to Limitations in Encision Objection Letter).
[8] *See* ¶ 6 to Mullenix Declaration for support as to the factual assertions in this paragraph.
[9] Exhibit 8 to Mullenix Declaration.
[10] ¶7 to Mullenix Declaration.

AEM, which would have detected insulation failure and cut the power to the scissors before an injury could have occurred.

As noted above, a company in Boulder, Colorado, named Encision, Inc., has long made electrified surgical instruments that incorporate AEM technology. In March 2009, Intuitive contracted with Encision so that it could use Encision's instruments and intellectual property for "use in or with Intuitive's present and future lines of robotic surgical systems[.]"[11] Encision was also required to "provide training to Intuitive personnel on use and operation of Products and attendant safety measures as reasonably required and upon request of Intuitive."[12] The agreement also authorized Intuitive to submit "Engineering Changes" for incorporation into Encision products,[13] and to have representatives present "at the Encision plants and production facilities" to conduct "periodic inspections of such plants and facilities and the manufacturing procedures[.]"[14] As part of the bargain, Encision granted Intuitive a "non-exclusive … worldwide license under Encision's Intellectual Property to use" Encision's products and "otherwise commercialize Intuitive Instruments within the Field."[15] Any Intuitive inventions would be "owned exclusively by Intuitive."[16] The initial term of the agreement was five years.[17]

In its motion, Intuitive characterizes this agreement as pertaining only to the newer "single site" system that Intuitive was developing at the time (and that was not used on any of the plaintiffs). But the word "single site" does not appear anywhere in the agreement, and the agreement explicitly applies to "*present* and future lines of robotic surgical systems."[18] Intuitive thus bought the right to incorporate AEM into the scissors that were used on Mr. Pohly, Ms. Roop, and Ms. Bosshart.

---

[11] Bellamy Decl. Ex. 2 at 2 (¶1.1.).
[12] *Id.* at 6 (¶5.3).
[13] *Id.* at 6 (¶6.1).
[14] *Id.* at 9 (¶13.8).
[15] *Id.* at 13 (¶15.1).
[16] *Id.* at 13 (¶15.4.1).
[17] *Id.* at 15 (¶19.1).
[18] Bellamy Decl. Ex. 2 at 2 (¶1.1.) (emphasis added).

The question is why Intuitive chose not to exercise that right. Intuitive's initial disclosures in this case[19] do not disclose any witness to answer that question, or talk about AEM at all.[20] Lisa Heaton, a Senior Director of Instruments, Accessories, and Engineering, testified that Intuitive "looked at" incorporating AEM into its scissors "before 2005" and concluded "it just wasn't feasible to implement it into our instruments."[21] But Ms. Heaton was not involved personally in that effort and could offer no explanation of the decision. Maggie Nixon, a Senior Director of Post-Market and Continuous Improvement, testified that she heard "hallway conversations" with Heaton, but could not recall specifics.[22]

The most specific explanation came from Joseph Orban, a Senior Mechanical Engineer at Intuitive. He testified that he had been at an engineering meeting at which AEM was discussed. He said the engineers "didn't think it was feasible" to incorporate AEM.[23] He testified the problem was the lack of space inside Intuitive's existing design: "at some point the wall thickness of the tube gets so thin to add in more features like active electrode monitoring, you would have no strength in the instrument."[24] When asked to elaborate, he could not do so: "We had done that in that meeting and thought it wasn't feasible."[25] He ultimately testified that he was "not familiar with the Encision instrument product line."[26]

This is not to say that Intuitive has rejected AEM as a viable technology. Both Orban[27] and Henry Hazebrouck, a Vice President of Product Engineering for Intuitive, confirmed that ISI

---

[19] In the related Washington case (*Roop*), ISI issued a supplemental disclosure (Exhibit 6 to Mullenix Declaration) identifying one employee witness who purportedly has knowledge on this decision. ISI is taking the position that it is now too late to depose that witness. However, this topic will be explored further at a soon-to-occur 30(b)(6) deposition.
[20] Exhibit 1 to Mullenix Declaration (ISI Initial Disclosures).
[21] Exhibit 9 to Mullenix Declaration (Heaton Deposition, *Roop*) at 19:6-8, 22:4-7.
[22] Exhibit 10 to Mullenix Declaration (Maggie Nixon Deposition, *Roop*, Non-Confidential) at 119:25-120:12. *See also id.* at 121:2-9 ("My very limited understanding is that there were significant tradeoffs that would be -- need to be made to the instrument of that size and range of motion. Those tradeoffs would cause other patient risks that are associated -- known to be associated with incision size increase, et cetera, that would be a challenge to overcome.").
[23] Exhibit 11 to Mullenix Declaration (Joseph Orban Deposition, *Roop*) at 114:2-6.
[24] *Id.* at 115:5-11.
[25] *Id.* at 115:12-19.
[26] *Id.* at 115:25-116:1.
[27] *Id.* at 116:7-19.

has been developing a "program" over "the last few years" regarding "possibly implementing" AEM into certain not-yet-released Intuitive products.[28] And an internal ISI document dated October 2, 2013, refers to the use of an "Encision Box" in a future product that would help prevent electrical coupling.[29] In other words, Intuitive appears to have found the solution to its undefined feasibility concerns shortly after its recall of the scissors that harmed Mr. Pohly, Ms. Bosshart, and Ms. Roop.

Recently, on November 14, 2016, Intuitive also disclosed a retained expert to testify about AEM. That expert, Martin Hagg,[30] wrote a report indicating he does *not* share the feasibility concerns suggested by Intuitive's company engineers. Rather, he opines that it was appropriate to disregard AEM technology because that technology would create *new* dangers: "AEM technology increases the risk for alternate site burns under certain circumstances and incorporation of AEM technology into the ISI [scissors] would introduce this additional risk into use of the [scissors]."[31] He does not explain in that report how ISI has been able to address this concern in its new product, which includes AEM technology.

Plaintiff's counsel deposed Mr. Hagg on December 2, and the deposition transcript is not yet available. However, Mr. Hagg confirmed at that deposition that he has no opinions as to the feasibility of incorporating AEM into the relevant version of the scissors. Hagg testified that he was not aware that Intuitive had incorporated AEM into its development version of its scissors, despite the criticisms in his report.[32] Likewise, the parties are working to schedule an ISI 30(b)(6) deposition that will address several AEM topics.[33]

---

[28] Exhibit 12 to Mullenix Declaration (Hazebrouck Deposition, *Roop,* Non-Confidential) at 54:23-55:4 ("Q. And where did you first learn about active electrode monitoring? A. There is a program that we've been developing over the last few years. It's still not on the market. But that program talked about possibly implementing it because of their particular architecture.").
[29] Exhibit 9 to Mullenix Declaration.
[30] Exhibit 3 to Mullenix Declaration (Hagg Report).
[31] *Id.* at 3 (third heading).
[32] ¶8 to Mullenix Declaration.
[33] *Id.*

PLAINTIFF'S OPPOSITION TO DEFENDANT ISI'S
MOTION TO MODIFY SUBPOENAS TO ENCISION, INC. – Page 9
*Pohly v. Intuitive Surgical, Inc.,* No. 1:16-mc-00223-PAB

Plaintiff's position is that these are sham criticisms.[34] Plaintiff has produced two experts – including the inventor of the AEM technology – to explain the issue. The inventor, Roger Odell, has been deposed twice by Intuitive and has produced a written report.[35] That report explains that AEM could have been incorporated into the Intuitive scissors without any safety sacrifice and only minimal expense. Plaintiff's other expert is Brenda Ulmer, who has also been deposed by Intuitive and produced a report.[36] Ms. Ulmer is a former past president of the Association of periOperative Registered Nurses who has had a career in nursing and worked in the device industry for decades training nurses and surgeons in how avoid electrosurgical injuries. She opines that, in her experience, AEM instruments work to prevent unintentional burns due to insulation failure during electrosurgery. Finally, the hospital at issue in the Roop case has used AEM instruments from Encision for several years and has never experienced the problems Hagg says AEM introduces.

### III. Argument and Authority

"The Federal Rules of Civil Procedure provide for discovery procedures that seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1158 (D. Colo. 2015). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1). The party seeking a protective order bears the burden of establishing its necessity. *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir.

---

[34] *See* ¶9 to Mullenix Declaration re the factual allegations in this paragraph.
[35] Exhibit 4 to Mullenix Declaration (Odell Report).
[36] Exhibit 5 to Mullenix Declaration (Ulmer Report).

1981); *Blatchley v. Cunningham*, 15-CV-00460-WYD-NYW, 2016 WL 1553573, at *2 (D. Colo. Apr. 18, 2016).

Mr. Pohly is bringing product defect claims under California law in this case. One of those claims is set out in CACI 1204,[37] and concerns the "Risk/Benefit Test" for a defective design claim. Under California law, if Mr. Pohly proves he was harmed because of the product's design, the burden shifts to Intuitive to show "that the benefits of [the product's] design outweigh the risks of the design." *Id.* To decide that question, the jury will consider several factors, including: "The feasibility of an alternative safer design at the time of manufacture" and "The disadvantages of an alternative design." *Id.* The discovery in this case is designed to help plaintiff's discover evidence relevant to those issues: (1) *Is it feasible to incorporate AEM in to the MCS?* (2) *What disadvantages does AEM introduce?*

The fact that ISI has incorporated AEM technology from Encision into the *next* version of its cautery instruments suggests doing so *is* feasible and that the advantages outweigh the disadvantages. Further investigation into that issue will help the plaintiff understand whether anything has changed since 2012 to make the incorporation of AEM more feasible or advantageous. Thus, this discovery is relevant to a key defense in the case.

Moreover, one of ISI's witnesses (Mr. Orban) has suggested that the size of the AEM technology was too great to be fit into the available space of the Intuitive electrified scissors. But Intuitive concedes in this motion that the instruments in which it is incorporating AEM are actually *smaller* that the electrified scissors used on Mr. Pohly, Ms. Roop, and Ms. Bosshart: "The 8mm instruments used in Plaintiff's surgery are 8mm in diameter while Single-Port instruments are 5mm in diameter."[38]  The challenged discovery will address that issue: whether Mr. Orban is right about AEM being too big to fit in the older scissors.

Intuitive argues at length about the "many significant differences" between the electrified scissors used in the subject surgeries and the new version that incorporates AEM. Intuitive

---

[37] A copy is attached as Exhibit 7 to Mullenix Deposition.
[38] Motion at 9.

argues that these differences mean that discovery related to the new version will "have little to no bearing as to what would have been 'feasible' (or even desirable) for the 2012 8mm MCS[.]"[39]

But the plaintiffs are not required to simply take Intuitive's word on this. The plaintiffs are entitled to see the documents, show them to their experts, and question Encision and Intuitive about these differences. If something that occurred after 2012 *made* it feasible to incorporate AEM into Intuitive's instruments, then Intuitive and Encision can explain what that was. But Intuitive should not be allowed to simply take the issue off the table and avoid the merits, unless Intuitive is willing to concede the feasibility and desirability of incorporating AEM into the scissors. Intuitive has refused to do so.[40]

Notably, *Encision* has agreed to produce the vast majority of this discovery, and to prepare its witnesses to discuss these issues pending the resolution of this motion.[41] Specifically, Encision has agreed to comply with Document Request No. 2, which concerns "All communications with Intuitive Surgical related … to the incorporation or use of Active Electrode Monitoring technology **in any da Vinci robotic system**."[42] Where Encision has sought to impose limitations on the discovery, plaintiff has agreed to those limitations.

Moreover, all three parties have agreed on an appropriate protective order, to protect Intuitive and Encision trade secret. This adequately addresses any risk of improper disclosure of trade secrets. Moreover, in this litigation, Intuitive has disclosed over one hundred thousand pages of documents related to its robotic system, nearly all of which it has labeled as confidential trade secret.[43] The parties have been able to adequately work with trade secret in this litigation, and there is no reason to believe this information – which has necessarily already been disclosed to Encision – should be any different.

---

[39] Motion at 10.
[40] *See* Mullenix Declaration at ¶10.
[41] *See* Exhibit 2 to Mullenix Declaration at 2-4 (Specific Objections to Requested Documents Nos. 1-6), 4-5 (Specific Objections to Requested Testimony Nos. 1-8).
[42] *Id.* at 2 ¶2 (emphasis added).
[43] ¶ 2 to Mullenix Declaration.

## IV. Conclusion

Plaintiff respectfully asks the Court to deny the motion and allow the discovery to proceed according to the already agreed upon limitations set out by Encision, Inc.

DATED:  December 5, 2016          s/ Peter J. Mullenix
                                                      Peter J. Mullenix
                                                      FRIEDMAN| RUBIN
                                                      51 University Street, Suite 201
                                                      Seattle, WA 98101
                                                      Tel:   206-501-4446
                                                      Fax:  206-623-0794
                                                      pmullenix@friedmanrubin.com

                                                      *Attorneys for Plaintiff Richard Pohly*

...

# CERTIFICATE OF SERVICE

      I hereby certify that on December 3, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Counsel for Defendant Intuitive Surgical, Inc.*

Galen D. Bellamy
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver CO 80202
Tel: (303) 244-1800
Fax: (303) 244-1879
E: bellamy@wtotrial.com

Courtesy copies of the foregoing document were served via email, pursuant to agreement of counsel, on the following:

*Counsel for Defendant Intuitive Surgical, Inc.*

Allen J. Ruby
S. Sheryl Leung
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto CA  94301
T:  650-470-4500
F:  650-470-4570
E: allen.ruby@skadden.com
E: Sheryl.leung@skadden.com

Lisa M. Gilford
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles CA  90071
T:  (213) 687-5000
F:  (213) 687-5600
E:  lisa.gilford@skadden.com

Taylor F. Brinkman
LOCKE LORD
2200 Ross Avenue, Suite 2800
Dallas TX 75201
T: (214) 740-8442
E: tbrinkman@lockelord.com

                                                Mary Ann Blackledge